Judge Mills
delivered the Opinion of the Co art.
On the third day of November, 1797, John Fristoe with Thomas Stark as security, executed to William Thompson, a bond conditioned to convey to said Thompson one hundred and eighty-four acres of land by metes and bounds.
On the same day, Thompson executed to said Fristoe .a bond conditioned to pay him eighty-three pounds eight shillings with interest from the date, being part of the price of the land to be conveyed ])y Fristoe. to-wit: the eighty-four acres, exceeding the one hundred, the price for the one hundred acres being supposed to be otherwise discharged, as may hereafter be explained.
On the 21st of August, 1803, William Thompson assigned his interest in the conveyance bond of Fristoe to Charles Boseberry and William Vance. Rosehcrry assigned his interest to Edward Steen, who assignejl his interest therein to John Peebeis. Vance assigned bis interest to John M. Hutchinson, who also assigned the same to John Peebeis, who, by said assignments, became invested with the whole interest in the bond on the 17th of April, 1806, the possession of the land to be conveyed by said bond, still accompanied the bond.
On the 18th of March, ISO0, Fristoe endorsed a credit on the bond which he held on Thompson for the purchase money, of 16Z. 10s., and on the 18th of April, 1800, he assigned the same bond to Thomas Stark, who was his security for the title of the land to Thompson, and in this situation that bond remained till this controversy commenced.
While John Peebeis held the land under his assignment of the. bond from Fristoe to Thompson, William C. Ralls, heir at law of iloreb Ralls, claiming the land by the same title, which Fristoe professed to sell to Thompson, brought an ejectment for the land and recovered a judgment.
pigment by ‘Peebels—
... ©fPeebel’s”1* hill.
Answers and ift e‘P ea eTS-
Recree in the y,dsvf Ralis &c. ‘ ?
Judgment for bonífor'baí-0 anee of the purchase mo-Tho’mpson’s executors,
Thompson’s ^.G^an¿js oí equity^
lst’ P3ymi?lli*
This judgment \va9 enjoi’tr-d by Peobels, who in ?iss bill made said William C. Ralls, Fristoe, Stark, Thompson and the assignors of the bond from Fristoe to Thompson defendants.
He alleged in the bill that Thompson had first bought 100 acres of the land from Horeb Ralls, the soil in law of Fristoe, and to whom Fristoe had conveyed the same land, for which 100 acres Thompson had paid, or rendered personal services in payment, during the performance of which services said Horeb Ralls, who lived in Virginia, died, and that said Fristoe, his father in law came to this country, and represented that the title of the land was still in himself; and gave his bond to Thompson for the 100 acre's which Horeb Ralls had sold to him, and also 84 acres more, for which Thompson had given his bon’d as before stated.
To this bill of Pecbels, Fristoe, Stark, Thompson, William C. Ralls and the assignors answered, and interpleaded with each other.
On a final bearing of that, suit, the court below dissolved the injunction of William C. Ralls, and dismissed the bill as to hita, whereby he gained the whole land, and decreed against Fristoe’s represeniatives, (he being then dead) and Thomas Stark, the then value of the land, it being in the mean time greatly increased in value, on the ground that Fristoe had committed a fraud upon Thompson, in selling liim land to which he knew he had no title, and which title he had conveyed to Horeb Rails long before that time.
Stark then, who held the bond from Thompson to Fristoe, for the purchase money, by assignment from Fristoe, brought his action of debt against Thompson’s representatives, he having died, pen. ding the former suit, and recovered a judgment for the amount with interest, deducting the credit upon the bond.
To be releived against this judgment, Thompson’s representatives filed this bill against the representatives of Stark, he having died in the mean time also, setting forth as grounds of equity.
1st, That Thompson had fully paid said bond in *298 his life time to Fristoe the obligee, or Stark the assignee.
Matter relating to the consideration.
Compromise, 'accord and satisfaction, &c.
Answer of Stark’s administrator, relying', among other things, that payment had been pleaded at law.
Decree of the .circuit court, perpetually ««joining the judgment.
2d. That the said bond was given for said tract of land, to which Fristoe had no title, by reason of which. Peebels the remote assignee of the title bond, had failed against William C. Ralls, heir at law of Horeb Ralls.
,3d. That said Peebels, William C. Ralls and Thomas fetark had made a compromise of the chancery suit before named of Peebels against William C. Ralls, Stark, Thompson, &c. before its trial, in which it was agreed that William C. Ralls should take his decree giving him the land by a dissolution of the injunction and dismissing the bill- — that Peebels should take bis decree for Ibc value of the land against Fristoe’s representatives, and Stark bis security, and then should assign that decree to' said William C. Ralls and Stark, or one of them to be recovered by them of Fristoe’s representatives, and should also pay to said William C, Ralls by the consent of Stark a sum of money in discharge of said bond from Thompson to Fristoe held. by Stark as the assignee, and that said William C. Ralls should convey to Peebels the same one hundred and eighty-four acres of land, which lie had done, and that Peebels had assigned his decree on Fristoe and Stark accordingly, and bad paid up the amount agreed to betreceived from Peebels in discharge of the bond held by Starks as assignee of Fristoe on Thompson, by which means the representatives of Thompson were discharged, the guardian ad litem to defend Thompson’s infant heirs in said suit having been a party to said agreement.
To this bill the administrator of Stark answered, denying his knowledge of these matters of equity, and requiring proof; thereof insisting that Peebels had obtained a decree in his suit, as the remote assignee of Thompson for the full value of the land, wíiich imposed upon Thompson’s representatives a payment of their bond, and pleading the judgment at law, 'as a bar to the equity set up, they having pleaded payment generally to the said action at law.
On the hearing the court perpetuated an injunction, and from that decree, the administrator of Stark has appealed to this court
Ground in the bill as to payment ovorruled, on the pleading and evidence.
Where payment is pleaded at law, payment in full cannot bo afterwards relied on for injunction.
In such case a replication by counsel to this ground of bar by former decision, that payment was pleaded, only to rely on the presumption by lapse of time, and that complainant did not (hen know the fact of payment,does not vary ‘th.o case.
When complainant seeks to rely in equity, on matter which was within the issue at law, he hausfc allege amt swear in (he pleadings in chancery, he was wholly ignorant of the facts, or otherwise, show why they were not there used.
*299 As to the first ground of equity set np, to-wit: that Thompson had paid the- bond in his life time, the appellees mustfail. For in the different answers of Thompson to the bill of Peebels, and in response to interrogatories by his co-defendants (which suit was terminated long before the present suit commenced,) he insists on the payment of the credit upon the bond and of twenty pounds more, proof of which be made in that suit by one witness; and the rest of the bond he admitted to be still due.
In addition to this, if Thompson had made payment, under the plea of payment atlaw, it was the duty of his representatives to adduce the proof thereof, and not having done so, they cannot be permitted again to retry the fact of full payment in chancery, whatever right they may have to partial payments.
It is true that by a replication to the plea and answer of Stark’s administrator, Thompson’s representatives have alleged that they pleaded payment in the action at law for the purpose alone of relying on the presumption of payment from the lapse of twenty years from the time the bond became due till suit was brought thereon, and they allege that at that time they were ignorant of the matters of equity set up in their- bill. But they have adduced no proof in support of this representation. Besides they have not in their bill, or in-any other part of their plead ings, to which they have made oath, deposed that they were ignorant of any of the matters set up in their bill on the trial at law. The - replication appears to have been made out and filed by counsel alone, without oath.
We hold it to be indispensable, when a party seeks to retry in chancery matters properly triable on the issue at law, that he must in a traversable shape allege and swear in the chancery pleadings, that he was wholly ignorant of these facts at the time of the trial, or give a strong reason, why he did not use such facts at law. So far then as the bill seeks relief from the judgment ón the ground of full payment by Thompson in his life time, or his representatives since his death, the appellees mustfail.
Decree di°soU vmg an executory eon-tract for land, is a sufficient ground, of injunction aguinst a judgment on an obligation for the pnrehasp iaoncy.
Wjieiv a recovery is uad'on the' conveyance bond, as if ail the purchase was yaití, a» obliga ¡ion fora balance of it .riniint be enjoined for ¶=. aut of title.
Noe do we conceive that the second ground, towil: the failure of consideration can avail the appellees. It is true that both Fristoe, the obligee aspl Stark the assignee of the bond now in contest, implicitly, and indeed we may say expressly admit, that Fristoe had no title, when he gave hi» bond fo Thompson binding himself to convey, and that ho had previously conveyed the title .to his son in law Horeb Ralls, whose heir Win. C. Ralls, by virtue of that title, recovered the land; and they excuse his sale of the land under these circumstances by saying that Horeb Ralls having departed this life, his widow and administratrix had empowered Fristoe her father, to come to this country and settle the business of said IJoreb, and that supposing he had power under that authority to meddle with his real estate, he had adjusted with Thompson a claim which ho held upon Ilorch Rajls by bond, (or 100 acres, and sold him 84 acres more, and gave his own bond for the conveyance of the whole-, and took in the bond which Thompson formerly held on- said Horeb for the 100 acres, and they both pray in that suit that the contract may be rescinded, and that Thompson, or whosoever is entitled, may be permitted to receive the, amount which he had paid in discharge of so, much of the bond now in contest.
If this decree had taken place, or Peebels had recovered the MK3- acres, for which Thompson previously held the bond on Horeb Ralis, and the contract liad been rescinded as to the remaining eighty four acres.) for which the bond now in contest was given, it would have furnished the representatives of Thompson with a clear equity iti this case. But neither of these events happened.
On the contrary, the decree in that suit imposed on Fristoe and Stark the. payment IW the whale of the land at. its then value, and did not discount against it the amount still remaining duo from Thompson on the bond now in dispute. This imposes upon Thompson’s representatives the payment óf this bond, as the decree, to which he, or his representatives, were parties, stands fay* on its facete this effect.
Held, on the allegations f,ncl; firooi\\. gation 0n which the judgment was was^oompromisod and satisfied p^els m6’ Ralls, Stark*'
Discordance of the decree ty of the°case may beevidencethatit re”‘:ereii mise anti by consentofthe notsTemercd.
There was bond for bond, and one the considera"ion of the other, and although Thompson’s remote assignee, Peebels, did not recover the land, yet as he recovered the value thereof in damages, Thompson ought to pay Fristoe or his assignee Stark, the amount of his bond. On this ground, therefore, the appellees must fail, unless something dehors that decree, arising out of the compromise of that suit, shall aid them.
This involves the consideration of their third ground of equity above named.
In proving this part of their equity, there is a coniroversy aboutrecording of the deposition of the seenrity in the injunction bond. On this controversy we need not Ueterame; tor the I’emauwig depositions coupled with the decree and proceedings in the chancery suit of Peebels vs. Ralls, Stark, &c. fully substantiate the facts alleged. It does appear that ihat suit was compromised in the following mode:— W. C. Ralls was to have a decree dissolving the in,junction, and dismissing the bill of Peebels as to him. — Peebles was to have his decree against Fristoe’s devisee and Stark for tile full value of the land. This decree lie was to assign and did assign to Will. C. Ralls, and was to pay the principal of the bond now in contest after the credits were deducted to Ralls, with the assent of Stark, the legal holder— Ralls was to convey the whole land to Peebels — and the estate of Thompson «vas to be discharged from further liability, agreeably to the understanding of the parties; and the special guardian of the infant children of Thompson, who, (but not his executors) were parties to that suit, made this a sine qua non in that arrangement.
It is true, that this arrangement was not entered of record in that suit, nor was the decree entered by consent. But the decree rendered, is so discordant with the equity of the case, that it creates a violent' presumptien, that it was produced by some understanding of the parties ami not the act of the court, anti is itself, as well as this suit which has grown out of ií, aseveré comment upon the impropriety of any court permitting a decree to be entered contrary io the- right of the. case, unless such entry is made *302 by tbe express assent of the parties on record. For it is impossible to suppose, that Thompson’s estate could have been made fiable to the bond now in suit, by any decree which a correct chancellor would have entered in that controversy.
One effected by a decree, but not a party, may aver and prove it was enlored. by an agreement of tlie parties, llm’ itbontracKct the record.
'¿latter of a plea of no- ’ cord ami satisfaction must be pleaded at law; and is, therefore, no ground for injunction.
Huí- — •
An accord and sa tisiaction moving from a stranger, not privy to a bond, is not a plea at law; bet grounds for injunction and relief in equity.
Although the consent, or arrangement then made, is not of record, yet it is competent for the executors of Thompson, who are the complainants in this, but not parties to that suit, to aver and prove the arrangement, even though it should contradict that record.
This they hive done, and the agreement is such that a court of equity ought to enforce it, and neither Stark, or his representatives ought to be permitted to recover now, because by that arrangement they may now seem to have the apparent legal right, when by tiiat compromise they acquired that right, by inducing the’special guardian of the- infant heirs to surrender a condition of safety, under an express understanding that the estate of his wards would be equally safe, by an extinguishment of the bond through tlie instrumentality of Peebels.
The only objection then, to the relief prayed, is, that which may arise from the supposition that this agreement, or compromise, being executed, would form a good plea of accord and satisfaction, which is a legal bar, of which the defendants could have availed themselves at law, and having failed to do so, they cannot use tlie defence in equity.
it may be admitted, that the complainants were bound to use in the action at law, all legal pleas known to them, and that a failure to do so, would be conclusive against them.
This supposition of this matter, forming a plea at law, on tiie first consideration of the case presented some difficulty in the mind of the court; but on more mature deliberation, that difficulty has been removed. For we conceive that this matter could not have been drawn out into the form of a plea of accord and satisfaction, which would have been sustained according to tlie rigid rules of law. The accord, if such it may be called, was made between Stark, the legal holder of this bond, — the guardian ad litem of Thompson’s infant, children — William C. *303 Halls anfl John Peebcls.' — The condition of Settle!inenl adhered to by the special guardian, was the acquittal of the estate of his wards — William C. Salís, though not the holder of the bond, but a stranger to it, was by thecorisent of the holder, to receive satisfaction for the bond, and Peobels who was a stranger to, and not privy to the bond, was to give the satisfaction, by paying' the amount in part, and a settlement of the suit and a transfer of his decree for the other suit.
juno 5.
M®*10” *°- re eaulli>'
Parties,
^11 1 s'
Pleading,
Oct. 9.
hearing oyerrutel. .
Tripiett for plaintiffs,
in error, moved the court for a rehearing, ori the ground, which he set forth in a^etition, that William C. Rails and Thomas Triplett, for whose use he alledged the action at law, had been prosecuted, and, were exclusively the owners of the judgment enjoined, which he said appeared in the record of the judgement exhibited who- were necessary parties; and that they not having been made defendants, the dismissal of the bill ought to have. been without prejudice, and not absolutely as it was done. lie cited Turner us. Cox, 5 Lilteli’s R, 175; 3 Bibb,53;2 Maddock’s Chancery, 143;3 Munford 29.
As early as the case of Grimes vs. Bolfield. Cro. Eliz. 541, it was decided that an accord and satisfaction, moving from a stranger, who was not privy to a bond, could not be pleaded in bar by the obligor. This decision has since been quoted in the abridgments and elementary writers as law, and has not been overturned, but has been adhered to by the supreme court of New York, in the case of Clow vs. Borst and Best, 6 John, 37. According to this doctrine, this matter could riot have been pleaded at law, and consequently can be used in equity, as it is a valid agreement, and to permit Starks’ representatives to recover any part of the money, is against conscience.
The decree must, therefore, be affirmed with posts.
Per Curiam
“The cages referred to* requiring, other parties to be made, are not analagous — ^.nd the interest of those who, it is insisted, ought to be made parties, does not appear in any part of the pleadings *304 in filis casé, but is only to lie gathered from the exhibits filed.
Triplett for plaintiffs^ Barry for defendants.
The petition is therefore overruled.”
And so the decree stands unaltered.